UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:                                    )

ROBERT WILLIAM KUHBLANK          )       CHAPTER 13 CASE NO. 06-11243-DHW
537 Tom Sawyer Lane
Crestview, Florida 32536-5264          )

DEBTOR.                                )

## APPLICATION TO APPROVE EMPLOYMENT OF REALTOR FOR ESTATE

COMES NOW the undersigned attorney for the Debtor in the above styled Chapter 13 proceeding and respectfully submits the instant Application to approve the employment of Debra Frost with Teel & Waters Real Estate Company, Inc., a disinterested person, to serve as realtor in this case for the purpose of attempting to sale property known as 449 and 445 Highway 90, Holt, Okaloosa County, Florida. In support of the foregoing statement, the undersigned attorney has obtained from said realtor both an Affidavit and a Listing Agreement which are attached hereto as Exhibits "A" and "B", respectively, and incorporated herein by reference.

This Application requests approval of compensation in the form of a real estate commission at the rate of 7% to be paid upon closing of the sale of this real estate.

After notice, the undersigned attorney prays the Court will authorize the employment of Debra Frost with Teel & Waters Real Estate Company, Inc., to proceed with the listing agreement for the foregoing purpose.

1

Respectfully submitted this __13__ day of November, 2006.

ESPY, METCALF & ESPY, P.C.

C. H. Espy, Jr. (ASB-8696-S78C)
ATTORNEY FOR DEBTOR
Post Office Drawer 6504
Dothan, Alabama 36302-6504
(334) 793-6288

Certificate of Service

I, C. H. Espy, Jr., do hereby certify a copy of the foregoing Application to Approve Employment of Realtor was served upon the following parties either electronically or by placing a copy of same to them on the U.S. Mail, postage prepaid, on this __13__ day of November, 2006.

Debtor

Ms. Debra Frost
TEEL & WATERS REAL ESTATE COMPANY, INC.
499 North Ferdon Blvd.
Crestview, FL   32536

Mr. Raybun Arnold
c/o Mr. Stanley Keith Luke
Attorney at Law
P.O. Box 776
Crestview, FL   32536

Mr. Curtis C. Reding
Chapter 12 Trustee
P.O. Box 173
Montgomery, AL   36101-0173

Ms. Teresa R. Jacobs
Bankruptcy Administrator
One Church Street
Montgomery, Alabama 36104

C H. Espy, Jr.

2

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:                                     )

ROBERT WILLIAM KUHBLANK                    )          CHAPTER 13 CASE NO. 06-11243-DHW
537 Tom Sawyer Lane
Crestview, Florida 32536-5264              )

        DEBTOR.                            )

### AFFIDAVIT

STATE OF FLORIDA,
COUNTY OF OKALOOSA.

   I, Debra Frost, first being duly sworn, do hereby depose and say:

   1. That I am a duly licensed realtor and I am actively engaged in the sale of real estate for Teel & Waters Real Estate Company, Inc. I have been engaged in the sale of real estate in Okaloosa County for approximately ___9___ years;

   2. I am the realtor the Debtor herein seeks to employ for the specific purpose of selling property known as 449 and 445 Highway 90, Holt, Okaloosa County, Florida.

   3. I have had experience in the field of real estate sales; and I am qualified and willing to represent the Debtor herein subject to my employment being approved by the Court.

   4. That I presently propose if a sale is obtained a commission would be paid from sales proceeds of 7% of the contract.

   5. That to the best of my knowledge I do not hold any interest adverse to that of the the bankruptcy estate herein.

   6. That I am a disinterested person as defined in Section 101(13) of the Bankruptcy Code.

                                              _Debra Frost_
                                              Debra Frost

SWORN TO AND SUBSCRIBED before me this _13th_ day of _November_, 2006.

                                              _Diana Baker_
                                              NOTARY PUBLIC
                                              My Commission Expires:_____

                                              Diana L. Baker
                                              Commission #DD335866
                                              Expires: Jul 07, 2008
                                              Bonded Thru
                                              Atlantic Bonding Co., Inc.



EXHIBIT
A

## Vacant Land Contract
FLORIDA ASSOCIATION OF REALTORS®

### PARTIES AND DESCRIPTION OF PROPERTY

1*   1. **SALE AND PURCHASE:** Scott Kesmer and/or his assigns _____ ("Seller")
2*   and Rob and Shirley Kuhblank _____ ("Buyer")
3    agree to sell and buy on the terms and conditions specified below the property ("Property") described as:
4*   Address: Hwy 90 W Hok FL 32564
5*   Legal Description: NE 1/4 of NW 1/4 of NW 1/4 S of Tr ex c 82 ft S of DB 108 PG 123 & BEG NW
6*   
7*   
8*   
9*   
10*  
11*  Including all improvements and the following additional property:
12*  
13*  

14                                      $ 131,500
15*  2. **PURCHASE PRICE:** $   ~~135,000.00~~   payable by Buyer in U.S. currency as follows:

16*  (a) $   5,000.00   Deposit received (checks are subject to clearance)   Upon Acceptance   by
17*                                              for   Okaloosa Title   ("Escrow Agent")
18*              Signature                             Name of Company

19*  (b) $ _____ Additional deposit to be delivered to Escrow Agent by _____
20*                  or ____ days from Effective Date. (10 days if left blank)

21*  (c) _____ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)

22*  (d) $ _____ Other: _____

23*  (e) $   120,000.00   Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds paid
24              at closing must be paid by locally drawn cashier's check, official bank check, or wired funds.

25*  ☐ (f) (complete only if purchase price will be determined based on a per unit cost instead of a fixed price). The unit used to
26*  determine the purchase price is ☐lot ☐acre ☐square foot ☐other (specify): _____
27*  prorating areas of less than a full unit. The purchase price will be $ _____ per unit based on a calculation of
28   total area of the Property as certified to Buyer and Seller by a Florida-licensed surveyor in accordance with Paragraph 8(e) of
28*  this Contract. The following rights of way and other areas will be excluded from the calculation:
30*  

31*  3. **CASH/FINANCING:** (Check as applicable) ☒(a) Buyer will pay cash for the Property with no financing contingency.
32*  ☐ (b) This Contract is contingent on Buyer qualifying and obtaining the commitment(s) or approval(s) specified below (the
33*  "Financing") within ____ days from Effective Date (if left blank then Closing Date or 30 days from Effective Date, whichever
34*  occurs first) (the "Financing Period"). Buyer will apply for Financing within ____ days from Effective Date (5 days if left blank)
35   and will timely provide any and all credit, employment, financial and other information required by the lender. If Buyer, after using
36   diligence and good faith, cannot obtain the Financing within the Financing Period, either party may cancel this Contract and
37   Buyer's deposit(s) will be returned after Escrow Agent receives proper authorization from all interested parties.
38*  ☐ (1) New Financing: Buyer will secure a commitment for new third party financing for $ _____ or
39*          ____ % of the purchase price at the prevailing interest rate and loan costs based on Buyer's creditworthiness. Buyer
40   will keep Seller and Broker fully informed of the loan application status and progress and authorizes the lender or
41   mortgage broker to disclose all such information to Seller and Broker.
42*  ☐ (2) Seller Financing: Buyer will execute a ☐first ☐second purchase money note and mortgage to Seller in the amount
43*  of $ _____, bearing annual interest at ____ % and payable as follows: _____
44*  
45   The mortgage, note, and any security agreement will be in a form acceptable to Seller and will follow forms generally
46   accepted in the county where the Property is located; will provide for a late payment fee and acceleration at the
47   mortgagee's option if Buyer defaults; will give Buyer the right to prepay without penalty all or part of the principal at any
48   time(s) with interest only to date of payment; will be due on conveyance or sale; will provide for release of contiguous

49*  Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 1 of 7 Pages.

VAC-9 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

This form produced by: _____ Formulator® 800-308-4027

**EXHIBIT**

B

50  parcels, if applicable; and will require Buyer to keep liability insurance on the Property, with Seller as additional named
51  insured. Buyer authorizes Seller to obtain credit, employment and other necessary information to determine creditworthiness
52  for the financing. Seller will, within 10 days from Effective Date, give Buyer written notice of whether or not Seller will make
53  the loan.
54*  ☐ (3) Mortgage Assumption: Buyer will take title subject to and assume and pay existing first mortgage to
55*  _____
56*  LN# _____  in the approximate amount of $ _____  currently payable at
57*  $ _____  ... per month including principal, interest, ☐ taxes and insurance and having a ☐ fixed ☐ other
58*  (describe) _____
59*  interest rate of _____ % which ☐ will ☐ will not escalate upon assumption. Any variance in the mortgage will be adjusted
60  in the balance due at closing with no adjustment to purchase price. Buyer will purchase Seller's escrow account dollar
61*  for dollar, if the lender disapproves Buyer, or the interest rate upon transfer exceeds _____ % or the
62*  assumption/transfer fee exceeds $ _____ , either party may elect to pay the excess, failing which this
63  agreement will terminate and Buyer's deposit(s) will be returned.

64  _____ 11-21-06  11-30-06  CLOSING
65  4. CLOSING DATE; OCCUPANCY: This Contract will be closed and the deed and possession delivered on or before
66*  ~~November 15~~  , 2008 , unless extended by other provisions of this Contract. If on Closing Date insurance
67  underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance suspension is lifted. If this transaction does
68  not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys, association documents and other
69  items.

70  5. CLOSING PROCEDURE; COSTS: Closing will take place in the county where the Property is located and may be conducted by
71  mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and recording
72  of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller (in local cashier's checks if Seller requests in
73  writing at least 5 days prior to closing) and brokerage fees to Broker as per Paragraph 17. In addition to other expenses provided in
74  this Contract, Seller and Buyer will pay the costs indicated below.
75  (a) Seller Costs: Seller will pay taxes on the deed and recording fees for documents needed to cure title; title evidence (if
76*  applicable under Paragraph 6); Other: _____
77*  (b) Buyer Costs: Buyer will pay taxes and recording fees on notes and mortgages and recording fees on the deed and
78*  financing statements; loan expenses; lender's title policy at the simultaneous issue rate; inspections; survey and sketch;
79*  insurance; Other: _____
80  (c) Title Evidence and Insurance: Check (1) or (2):
81*  ☒ (1) The title evidence will be a Paragraph 6(a)(1) owner's title insurance commitment. ☐ Seller ☒ Buyer will select the
82*  title agent. ☐ Seller ☒ Buyer will pay for the owner's title policy, search, examination and related charges. Each party will pay
83  its own closing fees.
84*  ☐ (2) Seller will provide an abstract as specified in Paragraph 6(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for
85  the owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search and
86  lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
87  (d) Prorations: The following items will be made current and prorated as of the day before Closing Date: real estate taxes,
88  interest, bonds, assessments, leases and other Property expenses and revenues. If taxes and assessments for the current year
89  cannot be determined, the previous year's rates will be used with adjustment for any exemptions. PROPERTY TAX
90  DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE
91  AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO
92*  PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE
93  PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING
94  VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.
95  (e) Special Assessment by Public Body: Regarding special assessments imposed by a public body, Seller will pay (i) the full
96  amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
97  if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will pay
98  all other amounts.
99  (f) Tax Withholding: If Seller is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires
100  Buyer to withhold 10% of the amount realized by the Seller on the transfer and remit the withheld amount to the Internal
101  Revenue Service (IRS) unless an exemption applies. The primary exemptions are (1) Seller provides Buyer with an affidavit that
102  Seller is not a "foreign person", (2) Seller provides Buyer with a Withholding Certificate providing for reduced or eliminated
103  withholding, or (3) the gross sales price is $300,000 or less, the Buyer is an individual who purchases the Property to use as a
104  residence, and Buyer (or a member of Buyer's family) has definite plans to reside at the Property for at least 50% of the number
105  of days the Property is in use during each of the first two 12 month periods after transfer. The IRS requires Buyer and Seller to
106  have a U.S. federal taxpayer identification number ("TIN"). Buyer and Seller agree to execute and deliver as directed any
107  instrument, affidavit or statement reasonably necessary to comply with FIRPTA requirements including applying for a TIN within 3
108  days from Effective Date and delivering their respective TIN or Social Security numbers to the Closing Agent.

109*  Buyer (____) (____) and Seller (____) (____) acknowledges receipt of a copy of this page, which is Page 2 of 7 Pages.

VAC-6 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

This form produced by: ***** Formulator 6  800-336-1027

110  If Seller applies for a withholding certificate but the application is still pending as of closing, Buyer will place the 10% tax in
111  escrow at Seller's expense to be disbursed in accordance with the final determination of the IRS, provided Seller so requests
112  and gives Buyer notice of the pending application in accordance with Section 1445. If Buyer does not pay sufficient cash at
113  closing to meet the withholding requirement, Seller will deliver to Buyer at closing the additional cash necessary to satisfy the
114  requirement. Buyer will timely disburse the funds to the IRS and provide Seller with copies of the tax forms and receipts.
115  (g) 1031 Exchange: If either Seller or Buyer wishes to enter into a like-kind exchange (either simultaneously with closing or
116  after) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects to
117  effectuate the Exchange including executing documents; provided, however, that the cooperating party will incur no liability or
118  cost related to the Exchange and that the closing shall not be contingent upon, extended or delayed by the Exchange.

119                                      **PROPERTY CONDITION**

120  **6. LAND USE:** Seller will deliver the Property to Buyer at the time agreed in its present "as is" condition, with conditions resulting
121  from Buyer's inspections and casualty damage, if any, excepted. Seller will maintain the landscaping and grounds in a comparable
122  condition and will not engage in or permit any activity that would materially alter the Property's condition without the Buyer's prior
123  written consent.

124  (a) Flood Zone: Buyer is advised to verify by survey, with the lender and with appropriate government agencies which flood
125  zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and rebuilding
126  in the event of casualty.

127  (b) Government Regulation: Buyer is advised that changes in government regulations and levels of service which affect
128  Buyer's intended use of the Property will not be grounds for canceling this Contract if the Feasibility Study Period has expired or
129  if Buyer has checked choice (c)(2) below.

130  (c) Inspections: (check (1) or (2) below)

131*  ☐ (1) Feasibility Study: Buyer will, at Buyer's expense and within _____ days from Effective Date ("Feasibility Study
132*  Period"), determine whether the Property is suitable, in Buyer's sole and absolute discretion, for _____
133*  _____ uses. During the Feasibility Study Period, Buyer may conduct a Phase I environmental
134  assessment and any other tests, analyses, surveys and investigations ("Inspections") that Buyer deems necessary to
135  determine to Buyer's satisfaction the Property's engineering, architectural and environmental properties; zoning and zoning
136  restrictions; soil and grade; availability of access to public roads, water, and other utilities; consistency
137  with local, state and regional growth management plans; availability of permits, government approvals, and licenses; and
138  other inspections that Buyer deems appropriate to determine the Property's suitability for the Buyer's intended use. If the
139  Property must be rezoned, Buyer will obtain the rezoning from the appropriate government agencies. Seller will sign all
140  documents Buyer is required to file in connection with development or rezoning approvals.

141  Seller gives Buyer, its agents, contractors and assigns, the right to enter the Property at any time during the Feasibility Study
142  Period for the purpose of conducting inspections; provided, however, that Buyer, its agents, contractors and assigns enter
143  the Property and conduct inspections at their own risk. Buyer will indemnify and hold Seller harmless from losses, damages,
144  costs, claims and expenses of any nature, including attorneys' fees, expenses and liability incurred in application for rezoning
145  or related proceedings, and from liability to any person, arising from the conduct of any and all inspections or any work
146  authorized by Buyer. Buyer will not engage in any activity that could result in a construction lien being filed against the
147  Property without Seller's prior written consent. If this transaction does not close, Buyer will, at Buyer's expense, (1) repair all
148  damages to the Property resulting from the inspections and return the Property to the condition it was in prior to conduct of
149  the inspections, and (2) release to Seller all reports and other work generated as a result of the inspections.

150  Buyer will deliver written notice to Seller prior to the expiration of the Feasibility Study Period of Buyer's determination of
151  whether or not the Property is acceptable. Buyer's failure to comply with this notice requirement will constitute acceptance of
152  the Property as suitable for Buyer's intended use in its "as is" condition. If the Property is unacceptable to Buyer and written
153  notice of this fact is timely delivered to Seller, this Contract will be deemed terminated as of the day after the Feasibility Study
154  period ends and Buyer's deposit(s) will be returned after Escrow Agent receives proper authorization from all interested
155  parties.

156*  ☐ (2) No Feasibility Study: Buyer is satisfied that the Property is suitable for the Property's purposes, including being satisfied
157  that either public sewerage and water are available to the Property or the Property will be approved for the installation of a
158  well and/or private sewerage disposal system and that existing zoning and other pertinent regulations and restrictions, such
159  as subdivision or deed restrictions, concurrency, growth management and environmental conditions, are acceptable to Buyer.
160  This Contract is not contingent on Buyer conducting any further investigations.

161  (d) Subdivided Lands: If this Contract is for the purchase of subdivided lands, defined by Florida Law as "(a) Any contiguous
162  land which is divided or is proposed to be divided for the purpose of disposition into 50 or more lots, parcels, units, or interests; or (b)
163  Any land, whether contiguous or not, which is divided or proposed to be divided into 50 or more lots, parcels, units, or interests which
164  are offered as a part of a common promotional plan.", Buyer may cancel this Contract for any reason whatsoever for a period of 7
165  business days from the date on which Buyer executes this Contract. If Buyer elects to cancel within this period provided, all funds or
166  other property paid by Buyer will be refunded without penalty or obligation within 20 days of the receipt of the notice of cancellation
167  by the developer.

168  **7. RISK OF LOSS; EMINENT DOMAIN:** If any portion of the Property is materially damaged by casualty before closing, or Seller
169  negotiates with a governmental authority to transfer all or part of the Property in lieu of eminent domain proceedings, or if an

170*  Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 7 Pages.
VAC-8 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

This form produced by: _Nature_ **Formulator®**  8006054427

171 eminent domain proceeding is initiated, Seller will promptly inform Buyer. Either party may cancel this Contract by written notice to
172 the other within 10 days from Buyer's receipt of Seller's notification, failing which Buyer will close in accordance with this Contract
173 and receive all payments made by the government authority or insurance company, if any.

174 **TITLE**

175 **8. TITLE:** Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or
176 guardian deed as appropriate to Seller's status.

177 (a) Title Evidence: Title evidence will show legal access to the Property and marketable title of record in Seller in accordance
178 with current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of which prevent
179* Buyer's intended use of the Property as _____ Investment _____; covenants, easements and
180 restrictions of record; matters of plat; existing zoning and government regulations; oil, gas and mineral rights of record (if there is
181 no right of entry); current taxes; mortgages that Buyer will assume; and encumbrances that Seller will discharge at or before
182 closing. Seller will deliver to Buyer Seller's choice of one of the following types of title evidence, which must be generally
183 accepted in the county where the Property is located (specify in Paragraph 5(c) the selected
184 type). Seller will deliver option (1) in Palm Beach County and option (2) in Miami-Dade County.

185 (1) A title insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and subject
186 only to title exceptions set forth in this Contract and delivered no later than 2 days before Closing Date.
187 (2) An existing abstract of title from a reputable and existing abstract firm (if firm is not existing, then abstract must be
188 certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the Property
189 recorded in the public records of the county where the Property is located and certified to Effective Date.
190 However if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as
191 a base for reissuance of coverage. Seller will pay for copies of all policy exceptions and an update in a format acceptable to
192 Buyer's closing agent from the policy effective date and certified to Buyer or Buyer's closing agent, together with copies of
193 all documents recited in the prior policy and in the update, if a prior policy is not available to Seller then (1) above will be the
194 title evidence. Title evidence will be delivered no later than 10 days before Closing Date.

195 (b) Title Examination: Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt of title
196 evidence but no later than closing, of any defects that make the title unmarketable. Seller will have 30 days from receipt of
197 Buyer's notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the defects within the
198 Curative Period, Seller will deliver written notice to Buyer and the parties will close the transaction on Closing Date or within 10
199 days from Buyer's receipt of Seller's notice if Closing Date has passed. If Seller is unable to cure the defects within the Curative
200 Period, Seller will deliver written notice to Buyer and Buyer will, within 10 days from receipt of Seller's notice, either cancel this
201 Contract or accept title with existing defects and close the transaction.

202 (c) Survey: Buyer may, prior to Closing Date and at Buyer's expense, have the Property surveyed and deliver written notice to
203 Seller, within 5 days from receipt of survey but no later than 5 days prior to closing, of any encroachments on the Property,
204 encroachments by the Property's improvements on other lands or deed restriction or zoning violations. Any such encroachment
205 or violation will be treated in the same manner as a title defect and Buyer's and Seller's obligations will be determined in
206 accordance with subparagraph (b) above. If any part of the Property lies seaward of the coastal construction control line, Seller
207 will provide Buyer with an affidavit or survey as required by law delineating the line's location on the property, unless Buyer
208 waives this requirement in writing.

209 **MISCELLANEOUS**

210 **9. EFFECTIVE DATE; TIME:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs the
211 latest offer. Time is of the essence for all provisions of this Contract. All time periods expressed as days will be computed in
212 business days (a "business day" is every calendar day except Saturday, Sunday and national legal holidays). If any deadline falls on
213 a Saturday, Sunday or national legal holiday, performance will be due the next business day. All time periods will end at 5:00 p.m.
214 local time (meaning in the county where the Property is located) of the appropriate day.

215 **10. NOTICES:** All notices will be made to the parties and Broker by mail, personal delivery or electronic media. Buyer's failure to
216 deliver timely written notice to Seller, when such notice is required by this Contract, regarding any contingencies will
217 render that contingency null and void and the Contract will be construed as if the contingency did not exist. Any notice,
218 document or item given to or received by an attorney or Broker (including a transaction broker) representing a party will be
219 as effective as if given to or by that party.

220 **11. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage
221 agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract.
222 Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound. This
223 Contract, signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated
224 electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms
225 inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or
226 unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence and good faith in
227 performing all obligations under this agreement. This Contract will not be recorded in any public records.

228 **12. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent. The terms "Buyer,"
229 "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors, personal
230 representatives and assigns (if permitted) of Buyer, Seller and Broker.

231* Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 4 of 7 Pages.
VAC-6 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

**DEFAULT AND DISPUTE RESOLUTION**

**13. DEFAULT: (a) Seller Default:** If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without waiving the right to seek damages or to seek specific performance as per Paragraph 14. Seller will also be liable to Broker for the full amount of the brokerage fee. (b) Buyer Default: If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as per Paragraph 14; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among cooperating brokers except when closing does not occur due to Buyer not being able to secure financing after providing a Commitment, in which case Broker's portion of the deposits will go solely to the listing broker) up to the full amount of the brokerage fee.

**14. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:

(a) Disputes concerning entitlement to deposits made and agreed to be made: Buyer and Seller will have 30 days from the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real Estate Commission. Buyer and Seller will be bound by any resulting award, judgement, or order.

(b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real estate licensee named in Paragraph 17 will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding. This clause will survive closing.

(c) Mediation and Arbitration Expenses: "Mediation" is a process in which parties attempt to resolve a dispute by submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally split the arbitrators' fees and administrative fees of arbitration. In a civil action to enforce an arbitration award, the prevailing party to the arbitration shall be entitled to recover from the nonprevailing party reasonable attorneys' fees, costs and expenses.

**ESCROW AGENT AND BROKER**

**15. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and, subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract, including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

**16. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, etc.) and for tax, property condition, environmental and other specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional inspectors and governmental agencies for verification of the Property condition and facts that materially affect Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from Buyer's or Seller's misstatement of or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers, directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; (3) products or services provided by any vendor; and (4) expenses incurred by any vendor. Buyer and Seller each assume full responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

**17. BROKERS:** The licensee(s) and broker(s) named below are collectively referred to as "Broker." Instruction to Closing Agent: Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 5 of 7 Pages.
VAC-9 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

This form produced by  Formulator® 800-336-1027

292  separate brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has
293  retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse brokerage
294  fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by Seller or listing
295  broker to cooperating brokers.
296

297  **Scott Kearney**                           E5598      **Dennis Mann Realty**
298  Selling Sales Associate                  License No.    Selling Firm/Brokerage Fee: ($ or % of Purchase Price)    2.4%

299  **Debra Frost**                            E2891      **Teel & Waters Real Estate Co Inc**
300  Listing Sales Associate                  License No.    Listing Firm/Brokerage fee: ($ or % of Purchase Price)

301  **18. ADDITIONAL TERMS:**
302  *1. Buyer to pay cash for the property with no financing contingency.*
303
304  *2. Buyer within receives November 10, 2006 if title is clear. Otherwise closing will be as soon as clear title is    obtained.*
305  3. Closing to be completed early should
306  all title work be completed prior to
307  closing date
308
...

352  Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 6 of 7 Pages.
     VAC-8 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

     This form provided by   [illegible] Formulator®   800 800-4627

383  This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

**OFFER AND ACCEPTANCE**

354*  (Check if applicable: ☐ Buyer received a written real property disclosure statement from Seller before making this Offer.)
355  Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a copy
356*  delivered to Buyer no later than ____8:00____ ☐ a.m. ☒ p.m. on ____November 7____ ____2006__, this offer will be revoked
357  and Buyer's deposit refunded subject to clearance of funds.

358*  Date: __11-7-06__      Buyer: _____
359*                          Print name: Scott Kearney_____

360*  Date: _____      Buyer: _____
361*  Phone: _____     Print name: _____
362*  Fax: _____       Address: _____
363*  E-mail: _____

364*  Date: _____      Seller: _____
365*                         Print name: _____

366*  Date: _____      Seller: _____
367*  Phone: _____     Print name: _____
368*  Fax: _____       Address: _____
369*  E-mail: _____

**COUNTER OFFER/REJECTION**

370*  ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy
371*  of the acceptance to Seller by 5:00 p.m. on _____ ). ☐ Seller rejects Buyer's offer.

372*  **Effective Date:** _____ (the date on which the last party signed or initialed acceptance or the final offer.)

373*  Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 7 Pages.
The Florida Association of REALTORS and local Association of REALTORS make no representation as to the legal validity or adequacy of any provision of this form in any
specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate
industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members
of the National Association of REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.
VAC-8 Rev. 10/04 © 2004 Florida Association of REALTORS® All Rights Reserved

This form produced by:  _____ **Formulator®**  800-336-1027